UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>COLUMBIAN THOMAS,<br>Defendant. | Criminal Action No. 23-73-11 (CKK) |

MEMORANDUM OPINION
(November 29, 2023)

Defendant Columbian Thomas is charged by indictment with conspiring to distribute, with others, thousands of counterfeit pills of fentanyl. Defendant has also been charged by indictment with possession of a machinegun in furtherance of a drug trafficking offense. On June 2, 2023, Magistrate Judge Robin M. Meriweather of this jurisdiction ordered Defendant to be temporarily detained without bond. On June 5, 2023, Magistrate Judge Moxila A. Upadhyaya, also of this jurisdiction, held a detention hearing for Defendant and granted the Government's oral motion to detain Defendant pending trial.

Before the Court is Defendant's [127] Motion for Bond Review. Defendant requests that the Court review his bond status and set conditions of release. Upon consideration of the pleadings,[1] the relevant legal authority, and the record before the Court, the Court shall **DENY** Defendant's [127] Motion for Bond Review.

I. BACKGROUND

**A. Procedural Background**

---

[1] The Court's consideration has focused on:
- Defendant's Motion for Bond Review, ECF No. 127 ("Motion" or "Mot.") and exhibits therein; and
- The Government's Opposition to Defendant's Appeal of Order of Detention, ECF No. 141 ("Gov't's Opp'n") and exhibits therein.

1

On March 9, 2023, the Government filed an indictment against Defendants Hector David Valdez, Craig Eastman, and Charles Jeffrey Taylor. ECF No. 1 (sealed). Additional defendants were indicted on April 26, 2023. ECF No. 25 (sealed). On May 18, 2023, a federal grand jury returned a superseding indictment against Defendant, among others, charging him with Conspiracy to Distribute 400 Grams or More of a Mixture and Substance Containing Fentanyl. ECF No. 48 (sealed). On November 6, 2023, Defendant was further charged with one count of Using, Carrying, and Possessing a Machinegun in Furtherance of a Drug Trafficking Offense. ECF No. 134 (sealed). Following the May 2023 indictment, Magistrate Judge Zia M. Faruqui of this jurisdiction issued an arrest warrant for Defendant, which was executed on June 2, 2023. ECF No. 55. That same day, Defendant appeared before Magistrate Judge Meriweather, who granted the Government's oral motion for temporary detention (for three days) and held Defendant without bond. *See* June 2, 2023 Minute Entry. On June 5, 2023, Defendant appeared for a detention hearing before Magistrate Judge Upadhyaya, who granted the Government's oral motion to detain Defendant pending trial. *See* June 6, 2023 Minute Entry.

Defendant subsequently filed the pending motion on October 27, 2023, requesting this Court to review his bond status and set conditions of release. ECF No. 127. The Government opposes Defendant's motion, filing its opposition on November 10, 2023. ECF No. 141.

**B. Factual Allegations**

In its opposition, the Government details the allegations against Defendant, messages exchanged between Defendant and co-Defendant Valdez, and the firearm, ammunition, and illicit drugs seized through a search of Defendant's residence. Broadly, the Government alleges that Defendant served as a "D.C.-based distributor of fentanyl-laced pills" by acquiring "his supply from [co-Defendant] Valdez in Los Angeles." Gov't's Opp'n at 4.

To support its claim, the Government recounts purported text messages between Defendant and Valdez. *Id.* at 4–6. According to the Government, the below messages were recovered from Valdez's phone, demonstrating Defendant's illicit dealing in vast quantities of lethal drugs. *Id.* at 4. For instance, on November 17, 2022, Defendant messaged Valdez, directing him to mail packages to a designated address in Washington, D.C. *Id.* The two defendants then discussed methods of payment and proof of shipment. *See id.* at 5.



3



*See id.* at 4–5. The Government proffers that the above exchange between Defendant and Valdez "is indicative of several such exchanges." *Id.* at 5. According to the Government, Defendant has sent at least $6,700 to Valdez via Apple Pay alone. *Id.*

The Government furthers claims that Defendant made multiple trips to California to visit Valdez "for re-supplies of counterfeit oxycontin pills." *Id.* at 6. For instance, on October 18, 2022, Defendant travelled to California, informed Valdez that he was landing at approximately 7:00 p.m., requested a ride from the airport, to which Valdez agreed and then made the following inquiry:

VALDEZ: yea you going to shop with me?

COLUMBIAN: duh, I always do.

VALDEZ: aye pops how many did you need?

COLUMBIAN: what y charging me?

VALDEZ: shit tbh get more than 6 I'll do 75 cents.

COLUMBIAN: Bra I always get more den 6.

VALDEZ: ok well I'll do 75 cents.

VALDEZ: you getting the joints rn right or just taking you to your hotel?

COLUMBIAN: right now. (The Defendant then shares his location with Valdez).

4

*Id.* at 6.  The Government states that the above exchange is just one example of communications demonstrating Defendant's trips to California specifically to purchase the illicit drugs.  *Id.*

Finally, the Government claims that Defendant possessed illicit drugs and a firearm in his residence, appending additional images to corroborate this claim.  *Id.* at 7–8.







*See id.* at 7–8. On June 2, 2023, law enforcement searched Defendant's residence in Maryland, discovering documents in his name and a "baggie containing approximately 201 (or about 21.8 grams of) blue M-30 pills." *Id.* at 6, 11. The Government represents that these pills tested positive for fentanyl. *Id.* at 6–7. Law enforcement also discovered during this search a "loaded Glock 21 .45 caliber handgun," which was equipped with an "extended magazine containing 21 rounds, an additional live round in the chamber, and a switch designed to make the weapon fire in a fully automatic capacity." *Id.* at 6. The Government states that the handgun has since been "test fired" and confirmed to be a machinegun. *Id.*

## II. LEGAL STANDARD

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment of the order" with "the court having original jurisdiction over the offense."

18 U.S.C. § 3145(b). The Court applies *de novo* review to the question and is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (BAH) (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009) (PLF)). "The motion shall be determined promptly." 18 U.S.C. § 3145(b).

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). A detention hearing must be held only if a case involves any of an enumerated set of offenses, including an offense "for which a maximum term of imprisonment of ten years or more is prescribed in[, *inter alia*,] the Controlled Substances Act," 18 U.S.C. § 3142(f)(1)(C), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In determining whether a defendant should be detained pending trial, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions. *Id.* at 1280; *see also Salerno*, 481 U.S. at 751 (requiring the Government to "prove[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community"). "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise[,] the scope of detention would extend beyond the limits set by Congress." *Munchel*, 991 F.3d at 1283.

### III. DISCUSSION

The Court concludes that the evidence presented by the Government in its briefing clearly requires Defendant Thomas' detention pending trial.

**A. Legal Principles**

As a threshold matter, the Court must address the proper standard to apply at this stage of proceedings. As explained above, Defendant has appealed his detention order pursuant to 18 U.S.C. § 3145(b). Such an appeal is subject to *de novo* review, in which the Court must engage in a searching, "factbound inquiry" to determine danger to the community and/or risk of flight. *United States v. Sabol*, 534 F. Supp. 3d 58, 69 (D.D.C. 2021) (EGS) (citing *Munchel*, 991 F.3d at 1283) (cleaned up).

In determining whether Defendant is a danger to the community or a flight risk, the Court considers the Section 3142(g) factors including: (1) "the nature and circumstances of the offense

8

charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).

The Court shall consider these factors based upon the present record without holding an additional hearing. *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 33–34 (D.D.C. 2005) (PLF) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]"). Based on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the "safety of any other person and the community" or flight in advance of trial. Accordingly, the Court orders that Defendant shall remain detained pending trial. *See* 18 U.S.C. § 3142(e)(1).

**B. Nature and Circumstances of the Offense Charged**

Turning to the Section 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including whether the offense involves "a controlled substance." 18 U.S.C. § 3142(g)(1). In this case, a rebuttable presumption of detention applies because Defendant has been charged by indictment with serious violations of the Controlled Substances Act. *See id.* § 3142(e)(3)(A); *United States v. Brown*, 538 F. Supp. 3d 154, 165 (D.D.C. 2021) (RCL). Even the possession with intent to distribute "9.11 grams of fentanyl and .89 grams of powdered cocaine" triggers such a presumption. *Brown*, 538 F. Supp. 3d at 165–66. Here, a grand jury has found probable cause that Defendant was engaged in a conspiracy to distribute more than 400 grams of fentanyl that ran from August 2020 until the present day, and

9

the Government has presented evidence, including text messages, that Defendant has trafficked thousands of grams of fentanyl. Gov't's Opp'n at 4–5. Furthermore, the Government presented convincing evidence that Defendant possessed a machinegun in furtherance of the drug trafficking offense. *Id.* at 7-8, 11. The Court must therefore presume that no condition or combination of conditions will reasonably assure Defendant's appearance as required or the safety of the community.

To rebut this presumption, Defendant must "offer some credible evidence" that he will not endanger the community or flee if released. *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (GMH). The Court finds that Defendant has failed to do so here. He argues, for example, that the allegations against him "do[] not involve any acts of violence"; the Government's evidence "does not include any controlled buys with [him]" or "involve any Title III wiretaps evidencing [his] involvement in the conspiracy"; and that there is no forensic evidence connecting him to the firearm or illicit drugs recovered at his residence. Mot. at 3–4. However, picking apart the Government's alleged evidence in support of its argument that Defendant would be a danger and/or a flight risk is not the same as offering credible evidence that he would not be a danger and/or a flight risk. In other words, Defendant challenges the Government's proffered evidence, but fails to offer any counterevidence to refute it. Notably, Defendant does not even address the fact that law enforcement supposedly recovered documents containing his name at the residence in Maryland, the same residence that housed the firearm at issue. *See* Gov't's Opp'n at 11.

The Court concludes that the nature and circumstances of the offense weigh in favor of detention. Defendant is charged with conspiring to distribute and possess with intent to distribute 400 grams or more of a substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846; and is also charged with using, carrying, and possessing a machinegun in furtherance of a drug

trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(B)(ii), 2. The first charge carries a ten-year mandatory minimum sentence, with a maximum of life. 21 U.S.C. § 841(b)(1)(A)(vi). The second charge carries a thirty-year mandatory minimum sentence. 18 U.S.C. §§ 924(c)(1)(B)(ii). "Moreover, this is not the case of an individual seller working alone." *Brown*, 538 F. Supp. 3d at 167. The Government alleges not just a conspiracy among the defendants in this action, but vast distribution across the United States. Therefore, Defendant's "alleged participation in the conspiracy charged thus strongly suggests that, if released, he would have the means to purchase and distribute narcotics and thereby endanger [not just] the D.C. community," but also communities throughout the United States. *See id.*

Moreover, all twelve of the previously apprehended defendants who had been indicted in the second superseding indictment were ordered detained pending trial, including California-based co-conspirators. *See United States v. Nava*, 2023 WL 3158987 (D.D.C. Apr. 28, 2023) (CKK) (ordering Defendants Nava and M. Torres detained pending trial). The Court is aware that additional defendants in the third superseding indictment have been ordered detained pending trial as well. *See, e.g.*, ECF No. 167 (vacating detention order as to Defendant Arana); ECF No. 182 (vacating detention order as to Defendant under seal); ECF No. 184 (vacating detention order as to Defendant Allen); ECF No. 191 (vacating detention order as to Defendant under seal). In each of these cases, there was sufficient evidence of fentanyl drug trafficking to warrant and support their detention. Releasing this particular defendant, who is a large-scale fentanyl trafficker in the District of Columbia, would be contrary to the other detention orders in effect. Therefore, the first factor weighs in favor of detention.

**C. Weight of the Evidence**

The weight of the evidence against Defendant also favors continued pretrial detention. The Government presents text messages and money transfers between Defendant and Valdez, substantiating its claim that Defendant did in fact traffic large quantities of counterfeit drugs. *See* Gov't's Opp'n at 4–6. Moreover, law enforcement recovered counterfeit drugs at Defendant's residence, which contained documents depicting his name, as well as a firearm capable of being converted into a machinegun. *Id.* at 7–8, 11.

Defendant's arguments that there is no forensic evidence connecting him to the illicit drugs and firearm recovered at his residence are unavailing. Mot. at 3–4. As noted above, Defendant fails to provide evidence that he did not engage in the alleged drug trafficking conspiracy or possess the firearm. Nor does Defendant provide evidence that the purported text exchanges between him and Valdez were not in fact between him and Valdez. As the Government states that the text messages were extracted from Valdez's phone, the Court can presume, in its discretion, that the Government can produce evidence at trial that Defendant is the correspondent in the text messages at issue. *Cf. United States v. Bell*, 209 F. Supp. 3d 275, 279 (D.D.C. 2016) (JEB).

Finally, the Court notes that Defendant is employed as a music artist. Mot. at 4. However, Defendant provides no evidence to suggest that his music career is successful enough to garner the amount of wealth the Government alleges he possesses, including large amounts of cash and expensive jewelry. *See* Gov't's Opp'n at 5 (alleging Defendant transferred $6,700 to Valdez via Apple Pay); *id.* at 11 (discovering a "diamond-encrusted Rolex and a diamond pendant of a paint chain" at his residence); *id.* at 14 (social media photograph depicting Defendant with a "large stack of cash").

In all, the Court finds that the weight of this evidence is strong. *See Brown*, 538 F. Supp. 3d at 168–69. Given the evidence to date, this factor weighs in favor of detention. *See United*

*States v. Brockhoff*, 590 F. Supp. 3d 295, 304 (D.D.C. 2022) (CKK).

### D. History and Characteristics of the Defendant

Under the third Section 3142(g) factor, the Court must consider a defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3).

Admittedly, Defendant's relatively minor criminal history weighs against pretrial detention. Defendant has no prior convictions, although he has been arrested three times. *See* Pretrial Services Report ("PSR"), ECF No. 95. Defendant also appears to have family and community ties in the District of Columbia. *See* Mot. at 4–5 (noting Defendant is a "life-long residence" of the area and could reside with his father in Bowie, Maryland).

On the other hand, the Government proffers that Defendant is "tied to a crew operating in the Paradise neighborhood of Northeast D.C.," which, according to the Government, "has been connected to multiple acts of violence and [disputes] with other crews." Gov't's Opp'n at 12. The Government directs the Court to certain lyrics that Defendant allegedly uses in a music video posted on YouTube in November 2022. *See id.* at 12–13 (claiming that Defendant stated in the music video "I got a gun that'll clear out a crowd / Nobody safe but the ladies and childs / They thought I was done but I'm back / I get out the car and I'm sending them shots."). Finally, the Government claims that Defendant has been arrested for "attempted robbery" and for "selling narcotics in a school zone" in 2016 and 2018, respectively. *Id.* at 13.

In all, the Court finds that this factor weighs in favor of detention.

### E. The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Conspiring to distribute fentanyl presumptively renders a defendant a serious danger to the community. *See Brown*, 538 F. Supp. 3d at 170; *cf. also United States v. Bethea*, 763 F. Supp. 2d 50, 54 (D.D.C. 2011) (RCL) (narcotics trafficking generally). Particularly so given the vast amount of drugs at issue here and alleged firearm possession. More generally, "the lethality of fentanyl and scourge of . . . opioids on this community [and communities around the country] further demonstrate the serious danger Defendant's release could pose." *United States v. Bolivar*, 455 F. Supp. 3d 1165, 1171 (D.N.M. 2020). And, the significant statutory penalties Defendant faces provide him with a strong incentive to flee.

Defendant argues that his proposed conditions of release would alleviate any concern of danger to the community and assure his compliance with the conditions. Mot. at 4–5. Specifically, Defendant proposes that he be released on the condition that he resides with his father in Bowie, Maryland, who has agreed to serve as a third-party custodian. *Id.* at 5. Defendant further consents to GPS monitoring and substance abuse testing. *Id.* at 5–6. Finally, Defendant agrees to have no contact with any witness or any of the other defendants in this case to alleviate the concern that he "may make efforts to intimidate witnesses or engage in other acts of obstruction." *Id.* at 6.

However, the Government has provided strong evidence indicating that Defendant not only knowingly and intentionally trafficked counterfeit pills, but that he also has access to a machinegun

14

and ammunition. *See generally* Gov't's Opp'n. Overall, the Court's concern regarding the safety of the community is not alleviated. Therefore, this factor also weighs in favor of detention.

* * *

All in all, even if Defendant could rebut the presumption of detention, the Court finds that no set of conditions can address the threat of danger he poses to the community in the District of Columbia or mitigate his risk of flight. Notably, Defendant's Pretrial Services Report states: "No condition or combination of conditions can reasonably assure the defendant's appearance or safety to the community." ECF No. 95 at 1. Here, the Government has shown that Defendant has a strong incentive to flee given the seriousness of the charges, the apparent weight of the evidence, and the substantial statutory penalties he is facing. Therefore, the Court concludes that the Section 3142 factors require pretrial detention.

## IV. CONCLUSION

The record as a whole establishes, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community or Defendant's presence at trial if he was released pending trial. 18 U.S.C. § 3142(e)(1). As such, the Court **DENIES** Defendant's [127] Motion for Bond Review. An appropriate order accompanies this memorandum opinion.

**Dated:** November 29, 2023

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge